IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>ALEXAS DAVIS,<br><br>　　　　　　Defendant. | 8:23–CR–39<br><br>MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION |

　　　　The Government has charged the Defendant, Alexas Davis, with one count of conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 1594(c). Filing 37 at 1–2. Davis has filed two different Motions to Suppress. Filing 60; Filing 62. The first Motion seeks to suppress statements Davis made to law enforcement officers. Filing 60; Filing 61. The Court will refer to this Motion as the "Motion to Suppress Statements." The second Motion seeks to suppress evidence obtained from the search and forensic examination of Davis's cellular phone. Filing 62; Filing 63. The Court will refer to this Motion as the "Motion to Suppress Cell Phone Evidence." After holding an evidentiary hearing, United States Magistrate Judge Susan M. Bazis issued a written Findings and Recommendation on the matter. Filing 97. Judge Bazis recommends that both of Davis's Motions be denied. Filing 97 at 1. This matter is now before the Court on Davis's Objections to Judge Bazis's Findings and Recommendation. Filing 98. After considering the matter and the relevant portions of the record in this case *de novo*, the Court overrules Davis's Objections, Filing 98, adopts Judge Bazis's Findings and Recommendation, Filing 97, and denies both of Davis's Motions to Suppress, Filing 60 and Filing 62.

1

## I.  I. BACKGROUND

Judge Bazis's Findings and Recommendation discusses the facts pertinent to Davis's Motions in greater detail. *See generally* Filing 97 at 1–7. Davis does not object to any portion of Judge Bazis's factual recitation in the Findings and Recommendation. *See generally* Filing 98; Filing 99. The following background provides context for the Court's ruling on Davis's objections.

Davis was interviewed by Omaha Police Department Detective Lisa Horton and Omaha Police Department Detective Jeff Shelbourn on March 2, 2023, at a police station in Wichita, Kansas. Filing 96 at 4, 7–8, 53. Detectives Horton and Shelbourn were part of a federal task force and were in Wichita at that time attempting to locate Davis on a federal warrant. Filing 96 at 6. After local Wichita police officers found Davis during a traffic stop, Davis was transported to the Wichita Police Department. Filing 96 at 7. Police-worn body camera footage recorded Davis's interaction with the local officer who escorted her to the police department. *See* Filing 92 (Exhibit 3). This footage captures Davis speaking to the officer while in the back of his patrol car and asking him relevant questions. *See* Filing 92 (Exhibit 3).

When Davis and her escorting officer arrived at the police department, she complied with his verbal directives as they maneuvered through the doorways, elevator, and hallways. *See* Filing 92 (Exhibit 3). During this time, Davis was able to walk on her own without any assistance. *See* Filing 92 (Exhibit 3). Davis was ultimately taken to a small room in the police department that was used for interviewing suspects. *See* Filing 92 (Exhibit 3). The escorting officer was verbally advised by an individual at the front desk that the recording equipment did not work. Filing 92 (Exhibit 3). Davis sat down in a chair and her escorting officer handcuffed one of her hands and one of her legs to a table in the room. *See* Filing 92 (Exhibit 3).

At some point thereafter, around 10:30 or 11:00 a.m., Detectives Horton and Shelbourn arrived, entered the room, and began their interview of Davis. Filing 96 at 9. Detectives Horton and Shelbourn—neither of whom had ever previously conducted an interview at the Wichita Police Department—assumed that their interview was being recorded. Filing 96 at 7, 29, 55. According to Detectives Horton and Shelbourn, they did not realize the interview had not been recorded until the interview had already been completed. Filing 96 at 13, 59. Detective Horton testified that when she learned the interview had not been recorded, she "immediately wrote a report detailing the interview with Miss Davis." Filing 96 at 13. Detective Shelbourn similarly testified that when they learned the interview had not been recorded, he talked with Detective Horton and they "decided Detective Horton would do an immediate supplementary report for it so that it was fresh in [their] minds what had been said[.]" Filing 96 at 59. Detective Shelbourn testified that when the report was completed, he reviewed it "and found it to be accurate." Filing 96 at 59.[1]

Although no recording of their interview exists, Detective Horton testified that at the beginning of the interview she read Davis her *Miranda* rights and Davis signed a form acknowledging her decision to waive these rights. Filing 96 at 8. This *Miranda* Waiver Form was received into evidence without objection at the evidentiary hearing. Filing 92 (Exhibit 1). Detective Horton testified that Davis did not ask any questions about her *Miranda* advisement and did not request an attorney. Filing 96 at 33–34. According to Detective Horton, Davis expressed that she was willing to speak with her. Filing 96 at 34. Detective Shelbourn likewise testified that Davis was advised of her *Miranda* rights "[v]ery early on after we entered the interview room." Filing

---

[1] During the hearing Detective Horton was questioned about what time she completed the report and whether she was at the police station when she wrote it. Filing 96 at 38–39. Detective Horton testified that because she writes many reports, she did "not recall the exact time that [she] authored this report." Filing 96 at 39. Counsel for Davis represented that the report indicated it was completed at 3:20 a.m. on March 3, 2023. Filing 96 at 38–39. Detective Horton testified that if that is what the report says, then she did not dispute it. *See* Filing 96 at 40 (Detective Horton stating that if the report says 3:20 a.m., "That's what I would go with.").

96 at 73. He also testified that Davis waived her *Miranda* rights and agreed to speak with them. Filing 96 at 56. According to Detective Shelbourn, Davis never indicated that she wanted to end the interview or wished to have an attorney present. Filing 96 at 56.

Their interview lasted approximately one to one and one half hours in length. Filing 96 at 9, 57. Detective Horton testified that during this time, she never noticed anything that led her to suspect Davis was impaired by alcohol or any other controlled substance. Filing 96 at 10. Detective Horton further testified that Davis never said she was intoxicated. Filing 96 at 13. Detective Shelbourn testified likewise. Filing 96 at 56–57. According to Detective Shelbourn, Davis appeared to understand the questions that were being asked, and her responses were appropriate, coherent, and detailed. Filing 96 at 58. Detective Horton described the "tone" of the interview as "[v]ery much like a conversation," while Detective Shelbourn described it as "[p]retty low-key, cordial." Filing 96 at 49, 58. According to Detective Horton, Davis indicated during the interview "[t]hat she had been involved in commercial sale of sex with several other individuals" including "the person identified in this case as the minor victim[.]" Filing 96 at 11. Detective Horton also testified that following the interview, she asked Davis if she would consent to a search of her phone. According to Detective Horton, Davis provided consent and memorialized her consent by completing a consent to search form. Filing 96 at 11–12. A redacted copy of this consent form was received into evidence without objection at the evidentiary hearing. Filing 92 (Exhibit 2).

## II. ANALYSIS

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), different standards of review apply when a party objects to a pretrial decision or a proposed findings of fact and recommendations by a magistrate judge. *See* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . .

4

. to which objection is made." *Id.*; *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) (When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . ."). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the hearing and has reviewed the exhibits admitted at the hearing.

5

### B. Davis's Objections

Davis does not contend that Judge Bazis applied incorrect legal standards. With respect to the Motion to Suppress Statements, Filing 60, Davis expressly concedes that Judge Bazis "correctly stated the state of the case law in the Eighth Circuit that must be used to resolve motions to suppress statements" in her Findings and Recommendation. Filing 99 at 1. With respect to the Motion to Suppress Cell Phone Evidence, Davis likewise concedes that Judge Bazis "correctly stated the state of the case law in the Eighth Circuit that must be used to resolve motions to suppress consent searches." Filing 99 at 2.

Davis's Objections to the Findings and Recommendation are instead based on a narrow argument that the Government simply failed to sustain its burden on either Motion given its alleged failure to present sufficient evidence regarding her age, maturity, education, intelligence, and previous contact with law enforcement. *See* Filing 99 at 3.[2] In Davis's telling, the Government's failure to introduce such evidence means that Judge Bazis could not have found a knowing, intelligent, and voluntary waiver of her *Miranda* rights, nor could Judge Bazis have concluded that Davis gave valid consent to search the cell phone. *See* Filing 99 at 3. As the Court will explain in greater detail below, Davis's argument lacks all merit.

---

[2] The Court notes that in her Brief in Support of her Motion to Suppress Statements, Davis also argued that her interview "was not recorded as required by Neb. Rev. Stat. § 29-4503 and Kansas Statute §22-4260." Filing 61 at 2. During the evidentiary hearing, Davis's counsel referenced this issue as well. Filing 96 at 79–80. Judge Bazis addressed this matter in her Findings and Recommendation and—correctly—rejected the notion that the failure to record Davis's interview with law enforcement should result in suppression of Davis's statements. *See* Filing 97 at 10. The Eighth Circuit has "held the Constitution does not mandate electronically recording a defendant's custodial interrogation." *United States v. French*, 719 F.3d 1002, 1007 (8th Cir. 2013) (citing *United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005)). The Court agrees with Judge Bazis's analysis and conclusion. However, Davis did not raise this issue in her Statement of Objections or supporting brief. *See* Filing 98; Filing 99. Therefore, she has abandoned this issue and waived consideration of it anyway. *See* Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review").

*1. Davis has Abandoned Her Original Argument Premised on Intoxication*

As an initial matter, the Court notes that Davis is not raising the same argument before this Court that she raised before Judge Bazis—something the Government is quick to point out in its response. *See* Filing 100 at 2. When she filed her Motions to Suppress, Davis took the position that "she was intoxicated and not capable of freely voluntarily, and knowingly consenting to giving a statement or consent to search during the time in which she was questioned." Filing 63 at 1; *see also* Filing 61 at 1. Now, in her Statement of Objections that she has brought before this Court, Davis never once claims that she was incapable of waiving her *Miranda* rights or providing consent to search her cell phone by reason of intoxication. *See generally* Filing 98; Filing 99. Indeed, Davis's Statement of Objections makes no mention of her being intoxicated at the time. *See* Filing 98. Accordingly, Davis has abandoned the intoxication argument she previously made in her Motions to Suppress.[3]

Even if she had not waived this argument, the Court concludes on *de novo* review that it lacks merit anyway. As Judge Bazis correctly observed, video footage of Davis's "transportation to the Wichita Police Department shows that [Davis] was talking and asking relevant questions." Filing 97 at 9; *see also* Filing 92 (Exhibit 3). It likewise shows that when Davis was taken to the interview room, "[s]he appeared to be walking normally and following the directions of the officer, further indicating a lack of intoxication." Filing 97 at 9; Filing 92 (Exhibit 3). This video footage corroborates the testimony of Detectives Horton and Shelbourn. Both of these officers testified that they had received training in detecting and observing signs of impairment due to alcohol or

---

[3] *See* Fed. R. Crim. P. 52(b)(2) ("Failure to object in accordance with this rule waives a party's right to review"); NECrimR. 59.2(a) ("A party may not merely reference or refile the original brief submitted to the magistrate judge. A party's failure to state a legal argument supporting objections to an order may be considered an abandonment of the party's objections."); NECrimR 59.2(e) ("Failure to object to a finding of fact in a magistrate judge's recommendation may be construed as a waiver of the right to object from the district judge's order adopting the recommendation of the finding of fact.").

controlled substances and had prior experience in their careers observing persons under the influence of alcohol and controlled substances. Filing 96 at 5, 54. They did not observe anything indicating that Davis was under the influence of alcohol or another substance. Filing 96 at 10, 13, 56–57.[4] The Court therefore agrees with Judge Bazis's analysis of this issue, notwithstanding Davis's decision to waive this matter by not raising it in her Statement of Objections.

    2. *The Argument Davis Raises Now in her Statement of Objections is Unavailing*

The Court will now address the argument Davis did make in her Statement of Objections. Although Davis's contention is basically the same with respect to both her Motion to Suppress Statements, Filing 60, and her Motion to Suppress Cell Phone Evidence, Filing 62, the Court will address this argument as to each Motion separately.

    a. Objections Related to the Motion to Suppress Statements (Filing 60)

Davis first claims that "the Government failed to elicit testimony sufficient to sustain it's [sic] burden regarding three of the five elements of the 'totality of the circumstances' test for voluntariness of the statement made by [her] as required by applicable case law." Filing 98 at 1. She therefore posits that Judge Bazis "had an insufficient basis to find that the statement taken from [her] was not one in which her will was not overborne or that she was capable of resisting questioning." Filing 98 at 1. Davis elaborates on this objection in her brief and states that the Government did not introduce evidence at the hearing showing she "knew the crime she was arrested for or that law enforcement informed her of the nature of the indictment or the possible penalties she faced if convicted[.]" Filing 99 at 3. Davis also argues that there was no "evidence

---

[4] Even assuming *arguendo* that Davis was intoxicated, the Eighth Circuit has made clear that "intoxication alone does not preclude a valid waiver." *United States v. Harris*, 64 F.4th 999, 1002 (8th Cir. 2023), *reh'g denied*, No. 22-1210, 2023 WL 3533498 (8th Cir. May 18, 2023). "Instead, the test is whether, considering the totality of the circumstances, the mental impairment caused the defendant's will to be overborne." *Id.* (internal citation and quotations omitted). Based upon an independent review of the record, the evidence does not suggest that Davis's will was overborne.

elicited or a finding made by [Judge Bazis] regarding [Davis's] education and intelligence, age, and whether, if [Davis] previously was arrested, and was familiar with the protections afforded by the legal system." Filing 99 at 3.

"To establish a valid *Miranda* waiver, the Government must show that the waiver was knowing, intelligent, and voluntary." United States v. Woods, 829 F.3d 675, 680 (8th Cir. 2016) (citing Maryland v. Shatzer, 559 U.S. 98, 104 (2010)). As the Eighth Circuit recently summarized:

> There are "two distinct dimensions" to the inquiry of whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." We consider the totality of the circumstances in determining whether a suspect's waiver is valid.

United States v. Rooney, 63 F.4th 1160, 1168 (8th Cir. 2023) (internal citations omitted).

"Essentially, a waiver is involuntary if under the totality of the circumstances the defendant's will was overborne." Id. at 1168–69 (internal citations and quotations omitted). However, "[s]ome of the factors [courts] consider include: 'the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, decision, physical condition, and mental condition.'" Id. at 1168 (quoting United States v. Magallon, 984 F.3d 1263, 1284 (8th Cir. 2021)).

After independently reviewing the record in this case and considering the matter *de novo*, the Court concludes that the Government satisfied its burden of showing that Davis knowingly, intelligently, and voluntarily waived her *Miranda* rights. Woods, 829 F.3d at 680. The Court rejects Davis's contrary contention for several reasons. First—as the Government correctly points out—Davis never argued in her Motion to Suppress Statements that her waiver was due to a lack of knowledge regarding the crime she was suspected of committing or her intelligence, age, and

9

familiarity with the legal system. *See* Filing 60; Filing 61; Filing 100. Her brief in support of her Motion instead focused on the issue of intoxication. *See* Filing 61 at 1–2. The Court therefore rejects Davis's argument that the Government failed to introduce sufficient evidence regarding her age, intelligence, education, and past involvement with the criminal justice system particularly given that Defendant did not previously argue that consideration of these factors militated in favor of finding an invalid waiver of rights. Second, to the extent Davis characterizes these "factors" as "elements" in her Statement of Objections, *see* Filing 98 at 1, she is incorrect. Again, "[v]oluntariness is determined by the totality of the circumstances, taking into consideration both the conduct of the officers and the characteristics of the accused." *United States v. Shan Wei Yu*, 484 F.3d 979, 985 (8th Cir. 2007) (internal citation and quotations omitted).

Prior to being interviewed, Davis was treated respectfully and appropriately by her escorting officer. *See* Filing 92 (Government Exhibit 3). Her interview was not exceptionally long, and the unrebutted testimony at the evidentiary hearing demonstrated that the tone of the interview was cordial and conversational. Filing 96 at 49, 58. Detective Shelbourn also testified that Davis's responses were appropriate, coherent, and detailed. Filing 96 at 58. Although the Government did not specifically introduce evidence of Davis's age, education, and prior experience with the criminal justice system at the hearing, the totality of the circumstances and consideration of other relevant factors leads the Court to conclude that Davis's waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Rooney*, 63 F.4th at 1168 (internal quotation mark omitted).

The Court likewise concludes that she "waived [her] rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Rooney*, 63 F.4th at 1168. The written *Miranda* Waiver Davis signed plainly set forth the rights

10

she had in clear and unambiguous language. *See* Filing 92 (Exhibit 1). Davis signed her name directly below the provision of the document that says, "I have read, or someone has read to me, this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Filing 92 (Exhibit 1). Moreover, Detective Shelbourn testified that Davis was advised of her *Miranda* rights "at the beginning of the interview." Filing 96 at 56. Accordingly, the evidence and testimony introduced at the hearing established that Davis waived her *Miranda* rights knowingly, intelligently, and voluntarily. *Woods*, 829 F.3d at 680. Davis's objection to the contrary is without merit.

> b. Objections Related to the Motion to Suppress Cell Phone Evidence (Filing 62)

As previously noted, Davis raises the same basic objection to Judge Bazis's resolution of the Motion to Suppress Cell Phone Evidence. Davis contends "the Government failed to elicit testimony sufficient to sustain it's [sic] burden regarding three of the five elements of the 'totality of the circumstances' test for voluntariness of the consent given by [her] as required by the applicable case law[.]" Filing 98 at 1. She therefore contends that Judge Bazis "had an insufficient basis to find that the consent given by [Davis] was not on in which her will was overborne or that she was capable of resisting giving consent for the search of the phone." Filing 98 at 1–2. Here again, Davis's brief relies upon the lack of evidence introduced at the evidentiary hearing regarding her knowledge of the crime she was arrested for, the possible penalties she faced if convicted, her education, intelligence, and age, and whether Davis was familiar with the protections of the legal system. Filing 99 at 3.

"A consensual search is consistent with the Fourth Amendment because it is 'reasonable for the police to conduct a search once they have been permitted to do so.'" *United States v. Garcia-Garcia*, 957 F.3d 887, 891–92 (8th Cir. 2020) (quoting *Florida v. Jimeno*, 500 U.S. 248,

251 (1991)). "'The issue turns not on the defendant's subjective state of mind, but on whether the officer reasonably believed the defendant consented.'" *Garcia-Garcia*, 957 F.3d at 892 (quoting *United States v. Espinoza*, 885 F.3d 516, 523 (8th Cir. 2018)). "To show that a person consented to a search, the Government must demonstrate that consent was the product of an essentially free and unconstrained choice." *Garcia-Garcia*, 957 F.3d at 895 (internal quotations and citation omitted). However, the Government is "'not required to demonstrate that [an individual knows] of his right to refuse the request to search as a prerequisite to establishing . . . voluntary consent.'" *Id.* at 897 (ellipses in original) (quoting *United States v. Cedano-Medina*, 366 F.3d 682, 687–88 (8th Cir. 2004). Instead, it need only prove "that a reasonable officer would believe that the consent was not the result of 'duress or coercion, express or implied.'" *Garcia-Garcia*, 957 F.3d at 897 (quoting *Cedano-Medina*, 366 F.3d at 688). As such, consent "may be inferred from the subject's 'words, gestures, and other conduct.'" *Garcia-Garcia*, 957 F.3d at 895 (quoting *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2010)). In determining whether consent is given voluntarily, the Eighth Circuit has instructed that the totality of the circumstances are to be considered and has identified several factors that are relevant to this analysis. *See Garcia-Garcia.* 957 F.3d at 896.

> Those factors include the defendant's age, education, intelligence, sobriety, and experience with the law; and . . . context . . ., such as the length of . . . questioning, the substance of any discussion . . . preceding the consent, whether the defendant was free to leave . . ., and whether the defendant's contemporaneous reaction to the search was consistent with consent.

*Garcia-Garcia*, 957 F.3d at 896-97 (ellipses in original) (citation omitted).[5]

The Court once again rejects Davis's reference to "elements" when what she really is referring to are factors bearing on a totality of the circumstances test. *See United States v.*

---

[5] The Eighth Circuit has noted that it has "grouped these factors into three categories: (1) the nature of the interaction between police and the defendant, (2) the personal characteristics and behavior of the defendant, and (3) the environment surrounding the defendant at the time he gave his consent." *Garcia-Garcia*, 957 F.3d at 897.

12

*Comstock*, 531 F.3d 667, 677 (8th Cir. 2008) ("Though these 'factors are valuable' and guide our analysis, we do not employ them mechanically"). For much the same reason that it rejected Davis's same basic argument in the context of her Motion to Suppress Statements, the Court likewise rejects it as applied to her Motion to Suppress Cell Phone Evidence. After considering the relevant factors and the totality of the circumstances *de novo*, the Court concludes that Davis's consent to search her cell phone "was the product of an essentially free and unconstrained choice." *Garcia-Garcia*, 957 F.3d at 895.

Davis memorialized her consent by signing a "Consent to Search" form. Filing 92 (Exhibit 2). This form expressly advised Davis that she had a right to refuse to consent to a search of her property, and that if she voluntarily consented to a search of her property "anything discovered during this search may be used against [her] in any criminal, civil, or administrative proceedings." Filing 92 (Exhibit 2). After being so advised, Davis signed her name directly below the portion of the form that reads: "I hereby voluntarily and intentionally consent to allow ICE to search my property. My consent is freely given and not the result of any promises, threats, coercion, or other intimidation. I have read the above statement and understand my rights." Filing 92 (Exhibit 2). Detectives Horton and Shelbourn both testified that Davis consented to a search of her cell phone. Filing 96 at 11, 58. Given the totality of the circumstances, "a reasonable officer would believe that the consent was not the result of duress or coercion, express or implied." *Garcia-Garcia*, 957 F.3d at 897. Accordingly, the Government established through evidence and testimony at the hearing that Davis's consent to search was voluntary and freely given under the totality of the circumstances. Her objection to the contrary lacks merit.

### III. CONCLUSION

For the foregoing reasons, and upon *de novo* review, the Court agrees with the findings and conclusions reached by Judge Bazis. Davis's objections lack merit, and all other issues that have not been raised by her in her Statement of Objections are waived. *See* Fed. R. Crim. P. 59(b). Accordingly,

IT IS ORDERED:

1. Davis's Statement of Objections, Filing 98, is overruled;
2. Judge Bazis's Findings and Recommendation, Filing 97, is adopted;
3. Davis's Motion to Suppress Statements, Filing 60, is denied; and
4. Davis's Motion to Suppress Cell Phone Evidence, Filing 62, is denied.

Dated this 12th day of December, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge